

FILED
CHARLOTTE, N.C.

01 MAR 23 PM 4:03

U.S. DIST. OF N.C.

| | |
|---|---|
| HERMAN LEE TATE,<br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent. | DOCKET NO. 5:01CV14-1-V-02<br>(5:98CR125-9-V)<br><br>**GOVERNMENT'S RESPONSE TO<br>28 U.S.C. § 2255 MOTION** |

The United States of America, by and through Robert J. Conrad, Jr., United States Attorney for the Western District of North Carolina, pursuant to the Order of the Honorable Richard L. Vorhees of February 13, 2001, with its Response to Defendant's Motion under 28 U.S.C. § 2255 filed on February 5, 2001.

### PROCEDURAL and FACTUAL BACKGROUND

Herman Lee Tate ("Petitioner") was charged in an indictment in May 1998 in the Western District of North Carolina for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 846. The indictment did not allege drug quantity, nor did the jury find drug quantity. Petitioner was found guilty by a jury on November 18, 1998. The United States Probation Department found that the evidence established that Petitioner was responsible for in excess of 1.5 kilograms of cocaine base and established a base offense level of 38.

At sentencing, Petitioner did not take issue with failure to allege drug quantity in the indictment nor the lack of determination of drug quantity by the jury. Petitioner was sentenced

by the Honorable Richard L. Vorhees to a mandatory life sentence.

Petitioner raised one issue on appeal and it was not the lack of determination of drug quantity. Petitioner subsequently withdrew this motion on or about December 16, 1999.

## STATEMENT OF THE FACTS

The amended pre-sentence report prepared subsequent to the entry of the defendant's guilty verdict, described a drug conspiracy with which petitioner was involved from 1991 to 1998. Petitioner would provide others in the conspiracy with cocaine and cocaine base. They in turn would sell the drugs and would then return the money obtained from drug transactions to Petitioner. The evidence supports the amount of cocaine base that was known to or reasonably foreseeable by the Petitioner was in excess of 1.5 kilograms.

## ISSUES

Petitioner raises the following legal issues:

1. Petitioner contends that <u>Apprendi v. New Jersey</u>, 120 S.Ct. 2348 (2000) applies retroactively on collateral review. In light of <u>Apprendi</u>, defendant contends that the statutes he was indicted under - 21 U.S.C. §§ 841 and 846 - are unconstitutional. In addition, Petitioner claims that, in light of <u>Apprendi</u>, his sentence should not exceed 20 years.

2. Petitioner claims that his counsel was ineffective in direct appeal for the following reasons:

    a. Counsel was ignorant of the law because he raised only one "wholly

2

frivolous" issue on direct appeal;

b. Counsel failed to order the trial and sentencing transcripts;

c. Counsel coerced Petitioner into stipulating to a dismissal of the appeal.

## DISCUSSION

### 1. Apprendi v. New Jersey is a constitutional rule of criminal procedure not found to be retroactive on collateral review.

Petitioner was sentenced to life imprisonment under 21 U.S.C. § 841 (b)(1)(A), which provides for a minimum 10-year term of imprisonment and maximum lifetime term of imprisonment and at least five years of supervised released. After Petitioner was sentenced in 1999, the United States Supreme Court decided Apprendi v. New Jersey, 120 S. Ct. 2348 (2000). Apprendi involved a New Jersey hate crime statute which enabled a state judge to increase the sentence for a racially-motivated crime beyond the prescribed statutory maximum sentence. The Apprendi court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 2362-2363.

In his § 2255 motion, Petitioner argues that: (1) Apprendi is applicable on collateral review; and (2) because drug quantity was not alleged in his indictment pursuant to Apprendi, he should have been sentenced under section 841(b)(1)(C) to a statutory maximum term of imprisonment of 20 years and a supervised release term of three years. Because no appellate court to date has found Apprendi to be retroactive on collateral review, Apprendi is not applicable to Petitioner's case.

In general, new constitutional rules of criminal procedure apply retroactively only to

3

cases which are on direct state or federal appeal at the time the rule is announced. See Griffith v. Kentucky, 479 U.S. 314, 328 (1987). In Teague v. Lane, 489 U.S. 288 (1989), the Supreme Court held that new rules of constitutional law do not apply on collateral attack. Retroactivity under Teague is a "threshold matter" which must be addressed "before considering the merits of [a] claim." Caspari v. Bohlen, 510 U.S. 383, 389 (1994).

In O'Dell v. Netherland, 521 U.S. 151 (1997), the Court set forth the procedure to be followed when a Teague issue has been raised on collateral attack. First, the Court must determine whether Petitioner's conviction became final prior to the new decision he invokes. If it did not, he is entitled to the benefit of the decision. If it did become final before the new decision, the second step is to determine whether the decision adopts a new rule. If it does not, again he is entitled to the benefit of the decision. If it did adopt a new rule, the third step is to determine whether one of the two narrow exceptions applies. If either exception applies, Petitioner is entitled to the benefit of the new decision. If neither exception applies, Petitioner is not entitled to the benefit of the decision and the inquiry ends. Id. at 156-157.

The Supreme Court has defined a "new rule" as one that was not "dictated by precedent existing at the time the defendant's conviction became final." Graham v. Collins, 506 U.S. 461, 467 (1993); Sawyer v. Smith, 497 U.S. 227, 234 (1990); Teague v. Lane, 489 U.S. at 301 (emphasis in originals). Under this standard, Apprendi clearly adopted a new rule.

Because Apprendi adopted a new rule of constitutional law, it is inapplicable to cases such as Petitioner's case on collateral review, unless it falls within one of two narrow exceptions: (1) rules that place certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe; and (2) rules that implicate fundamental fairness in a

4

way that seriously affects the likelihood of an accurate conviction. See Teague v. Lane, 489 U.S. at 311-313. Apprendi does not fall within either of these exceptions.

First, Apprendi does not place any primary, private individual conduct beyond the power of the law to proscribe. The decision does not hold that one cannot receive additional punishment for any fact, it simply imposes procedural requirements for the establishment of certain facts. As the Apprendi court explained: "The substantive basis for New Jersey's enhancement is not at issue; the adequacy of New Jersey's procedure is." 120 S. Ct. at 2354. Throughout the opinion, the Court described the question, the protections, and the safeguards it was discussing as "procedural." See 120 S. Ct. at 2354-2355, 2359, 2361, 2362.

Apprendi is unlike decisions such as McNally v. United States, 483 U.S. 350 (1987), and Bailey v. United States, 516 U.S. 137 (1995), which held that certain conduct cannot constitute a violation of federal law. Such substantive decisions apply retroactively to cases on collateral review. Bousley v. United States, 523 U.S. 614 (1998) (Bailey held retroactive); United States v. Osser, 864 F.2d 1056 (3d Cir. 1988) (McNally held retroactive). Apprendi did not hold that a person may not be punished for certain conduct, but rather that he may not be punished in the absence of certain procedural safeguards. Under Teague, such a procedural decision generally does not apply retroactively to cases on collateral review.

Second, Apprendi does not implicate fundamental fairness in a way that seriously affects the likelihood of an accurate result. For retroactivity purposes, however, the relevant inquiry is not the absolute importance of a procedural safeguard, but rather its importance relative to the protection the defendant did in fact receive. "[T]he question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is

5

necessarily a matter of degree." Solem v. Stumes, 465 U.S. 638, 644 (1984), quoting Johnson v. New Jersey, 384 U.S. 719, 728-729 (1966). "It is thus not enough under Teague to say that a new rule is aimed at improving the accuracy of trial. More is required." Sawyer v. Smith, 497 U.S. at 242.

In large measure, the retroactivity question is one of "probabilities" that turns on "the extent to which other safeguards are available to protect the integrity of the truth-determining process...." Johnson v. New Jersey, 384 U.S. at 729. Accordingly, the Supreme Court has repeatedly declined to apply new constitutional standards retroactively to prior cases if the defendants in those cases had the benefit of pre-existing, albeit less specific or less stringent, standards protecting the same interests. Sawyer v. Smith, 497 U.S. at 243; Solem v. Stumes, 465 U.S. at 644.

Under pre-Apprendi law, the government was required to give fair notice of sentencing factors such as drug quantities and the district court was required to find the relevant facts by a preponderance of the evidence. Although not as stringent as the Apprendi standards, these safeguards are considerable. In our legal system, we rely upon district court findings of fact by a preponderance of the evidence in a variety of proceedings including non-jury civil trials; detention, suppression, and other criminal pre-trial hearings; and criminal sentencings. Our system is based upon the firm belief that such findings are accurate and reliable in the vast majority of cases.

Of course, a finding of guilt beyond a reasonable doubt by a jury confers upon criminal defendants an additional measure of protection that is warranted by the gravity of the consequences of a conviction. It does not follow, however, that this extra measure of protection

6

Case 5:01-cv-00014-RLV   Document 5   Filed 03/23/01   Page 6 of 16

is essential to a fair and accurate determination or that it affects the result in a large percentage of cases.

For example, the courts have declined to apply retroactively United States v. Gaudin, 515 U.S. 506 (1995), which held that, in a false statement prosecution, the question of materiality must be decided by the jury instead of by the court. Bilzerian v. United States, 127 F.3d 237, 241 (2d Cir. 1997); United States v. Shunk, 113 F.3d 31, 37 (5th Cir. 1997); United States v. Swindall, 107 F.3d 831, 836 (11th Cir. 1997). In Bilzerian, 127 F.3d at 241, the court reasoned:

> The rule in Gaudin merely shifts the determination of materiality from the judge to the jury. This shifting does not "alter our understanding of the bedrock procedural elements" essential to the fairness of a trial. Teague, 489 U.S. at 311 . . . There is little reason to believe that juries will have substantially different interpretations of materiality than judges and therefore, practically speaking, Gaudin will do little to alter the status quo.

In Shunk, 113 F.3d at 37, the court concluded: "one can easily envision a system of 'ordered liberty' in which certain elements of a crime can or must be proved to a judge, not to the jury."

In the principal dissenting opinion in Apprendi, Justice O'Connor described the decision as a "watershed change in constitutional law." There is no reason to believe, however, that Justice O'Connor meant by that to suggest that Apprendi falls within the Supreme Court's description of the second Teague exception as an exception for "watershed rules of criminal procedure implicating fundamental fairness and accuracy of the criminal proceeding." Saffle v. Parks, 494 U.S. 484, 495 (1990). Justice O'Connor's reference to a "watershed change" was not tied to any reference to either fundamental fairness or accuracy in criminal proceedings. The dissenting justices obviously did not believe that the Apprendi rule was required by considerations of fundamental fairness or accuracy, for they would not have adopted the rule at

7

all.

Applying a Teague analysis, the Supreme Court has not made the Apprendi rule retroactive to cases on collateral review. As the Fourth Circuit has noted, "a new rule of constitutional law has been 'made retroactive to cases on collateral review by the Supreme Court' within the meaning of § 2255 only when the Supreme Court declares the collateral availability of the rule in question, either by explicitly so stating or by applying the rule in a collateral proceeding." In re Vial, 115 F.3d 1192, 1197 (4th Cir. 1997)(quoting § 2255). See, e.g., In Re Tatum, 233 F.3d 857 (5th Cir. 2000); Jones v. Smith, 231 F.3d 1227 (9th Cir. 2000); Rodgers v. United States, 229 F.3d 704, 706 (8th Cir. 2000) ("We therefore deny Rodgers' petition because the Supreme Court has not made *Apprendi* retroactive to cases on collateral review, as required by the plain language of Section 2255."); Talbott v. Indiana, 226 F.3d 866, 868 (7th Cir. 2000)("If the Supreme Court ultimately declares that *Apprendi* applies retroactively on collateral attack, we will authorize successive collateral review of cases to which *Apprendi* applies. Until then, prisoners should hold their horses and stop wasting everyone's time with futile applications."); In Re Joshua, 224 F.3d 1281, 1283 (11th Cir. 2000)("*Apprendi* was decided in the context of a direct appeal, and the Supreme Court has not applied it in a case on collateral review."); Sustache-Rivera v. United States, 221 F.3d 8, 15 (1st Cir. 2000)("[I]t is clear that the Supreme Court has not made the rule [in *Apprendi*] retroactive to cases on collateral review..."). The retroactivity analysis under Teague applies with equal force to first and second 2255 motions. Consistent with the Courts of Appeal, several district courts have recently held that Apprendi should not be given retroactive effect on habeas review. See Klein v. United States, 125 F. Supp.2d 460, (D.Wyo. Dec. 19, 2000); Ware v. United States, 124 F. Supp.2d 590,

(M.D.Tenn. Dec. 8, 2000); United States v. Johnson, 126 F. Supp.2d 1222, (D.Neb. Dec. 7, 2000); United States v. Hopwood, 122 F. Supp.2d 1077 (D.Neb. Dec. 4, 2000); United States v. Pittman, 120 F. Supp. 2d 1263 (D.Or. Nov. 15, 2000).[1]

Thus, neither of the Teague exceptions applies. Furthermore, the general rule of non-retroactivity is especially appropriate with respect to Apprendi because of the enormous impact of retroactive application to all cases on collateral review.

As indicated above, the older decisions expressly considered the extent of reliance on former standards and the impact on the administration of justice of retroactive application of newly adopted standards. Although those considerations are no longer stated as discrete factors in more recent opinions, they have never been repudiated by the Supreme Court. Teague emphasized both the need for finality in criminal cases, 489 U.S. at 308-309, and the costs of retroactive application of new rules of constitutional law in habeas corpus proceedings, 489 U.S. at 310. See Sawyer v. Smith, 497 U.S. at 242-243. Thus, the former reliance and impact factors are subsumed in the Teague presumption against retroactive application of new decisions to cases on collateral review.

Petitioner's case is a good example of the potential costs of retroactive application of Apprendi. Narcotics prosecutions represent a large percentage of the total number of federal criminal prosecutions. According to the United States Attorneys Statistical Report for Fiscal Year 1999, published by the Executive Office for United States Attorneys of the Department of Justice, in fiscal year 1999, United States Attorneys nationwide filed 50,779 criminal cases

---

[1] Only one district court, United States v. Murphy, 109 F.Supp.2d 1059 (D.Minn. Aug. 7, 2000), has found Apprendi retroactive.

9

Case 5:01-cv-00014-RLV   Document 5   Filed 03/23/01   Page 9 of 16

against 71,560 defendants. Of those totals, 16,617 cases against 29,846 defendants were narcotics cases. Of 57,876 defendants convicted of crimes in fiscal year 1999, 23,133 were defendants in narcotics cases. Thus, narcotics cases constituted more than a third of all criminal cases and included about forty percent of all defendants prosecuted and convicted.

The overwhelming majority of federal narcotics prosecutions include charges under Title 21, United States Code, Sections 841 or 846, as to which the maximum penalties vary by drug quantity under the subsections of Section 841(b). Full retroactive application of Apprendi would therefore call into question tens of thousands of convictions and sentences in drug cases alone. The fact that a new procedural decision potentially affects a large percentage of all federal convictions is a compelling consideration against its retroactive application. Halliday v. United States, 394 U.S. 831, 833 (1969).

For all of these reasons, the Teague rule of non-retroactivity should govern and Apprendi v. New Jersey should not apply to Petitioner's case.

### Petitioner cannot demonstrate that he was actually prejudiced by the results obtained in his case.

Even assuming *arguendo* the application of Apprendi, Petitioner would then face the virtually insurmountable hurdle of the "cause and prejudice" standard since Petitioner failed to raise the new constitutional rule established in Apprendi at either the trial level or on direct appeal. See Bousley v. United States, 523 U.S. at 622 (to pursue a defaulted claim, defendant must demonstrate "cause and actual prejudice" or that he is actually innocent). See United States v. Frady, 456 U.S. 152, 167-168 (1982) (the defendant seeking collateral relief based on errors

not raised at trial or on appeal must show "cause" excusing his procedural default and "actual prejudice"; defendant must show "not merely that the errors at his trial create a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original).

As to "cause," Petitioner provides no explanation for his default to raise the Apprendi issue. Petitioner merely states in his motion to amend that the United States Supreme Court recently decided the rule established in Apprendi.

As to "prejudice," Petitioner has not demonstrated that he was actually prejudiced by the results obtained in his case. The evidence at trial in Petitioner's case was sufficient to establish that Petitioner was a member of a drug conspiracy that distributed 1.5 kilograms of cocaine base. As a result, this Court's finding that Petitioner was accountable for in excess of 1.5 of cocaine base is well-supported by the evidence from the record. Accordingly, Petitioner's sentence should be affirmed on this ground as well.

2. **Defendant's Claim of Ineffective Assistance of Counsel.**

Defendant contends that he was denied the effective assistance of counsel. There is no merit to defendant's contention. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court adopted a two-pronged test for determining whether the defendant received adequate assistance of counsel. The first prong is competence. Petitioner must show that counsel's representation fell below the objective standard of reasonableness. There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. 466 U.S.

11

at 689. See Roach v. Martin, 757 F.2d 1463, 1476 (4th Cir.), cert. denied, 474 U.S. 865 (1985). See also Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978) (adopted McMann v. Richardson, 397 U.S. 759, 771 (1970), test, i.e., whether counsel's performance "was within the range of competence demanded of attorneys in criminal cases."); Tolliver v. United States, 563 F.2d 1117 (4th Cir. 1977) (mistake and neglect in application of law); Coles v. Peyton, 389 F.2d 224 (4th Cir.), cert. denied, 393 U.S. 849 (1968).

Second, "[t]he petitioner must show that there is a reasonable probability that but for the counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, 466 U.S. at 694. For ineffectiveness claims, "'[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest adversely affected his lawyer's performance.'" Id. at 692 (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (footnote omitted) (1980)). See also Hutchins v. Garrison, 724 F.2d 1425 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984) (burden on petitioner to show prejudice); Goodson v. United States, 564 F.2d 1071 (4th Cir. 1977) (incorrect advice or trial error must be prejudicial to require relief); Horne v. Peyton, 356 F.2d 631 (4th Cir.), cert. denied, 385 U.S. 863 (1966) (fact that counsel could have done more insufficient for reversal absent any showing of harmful consequences).

This two-pronged test promulgated by Strickland is also referred to as the "performance" and "prejudice" components. Fields v. Attorney General of the State of Maryland, 956 F.2d 1290, 1296 (4th Cir. 1992) (citations omitted). If the defendant is unable to demonstrate the requisite prejudice, the reviewing court need not even consider the performance prong. See

Luchenberg v. Smith, 79 F.3d 388, 391 (4th Cir. 1995) (citing Strickland, 466 U.S. at 697).

A presumption exists that counsel is competent. A petitioner for post-conviction relief bears a heavy burden to overcome this presumption, and the presumption is not overcome by conclusory allegations. Carpenter v. United States, 720 F.2d 546 (8th Cir. 1983). Petitioner claims that his appellate counsel's failure to obtain trial transcripts renders the assistance he received ineffective. The presumption has not been overcome, especially in light of the fact that Mr. Matthews was both Petitioner's trial and appellate counsel putting him in the position to adequately assess the appealable issues in the case.

In Lockhart v. Fretwell, 506 U.S. 364 (1993), the High Court explained that "an analysis focusing solely on mere outcome determination . . . is defective." Id. at 369. Instead, a proper prejudice analysis must consider "whether the result of the proceeding was fundamentally unfair or unreliable." Id. As a result, a court may not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." Id. at 369-70 See Mikalajunas, supra.

"Strategic options made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable." Strickland v. Washington, 466 U.S. at 690. Accord: Bell v. Evatt, 72 F.3d 421, 429 (4th Cir. 1995). "Every effort must be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at trial." Strickland v. Washington, 466 U.S. at 689. Indeed, the appellate courts are reluctant to second-guess tactical decisions of counsel, Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), and it is the defendant who bears the burden of overcoming the presumption that the challenged actions might

13

be considered sound strategy. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1997).

Defendant complains that his counsel "raised one wholly frivolous issue on direct appeal". Defendant also contends that there "were viable issues". Petitioner in no way suggests that his counsel, Scott A. Matthews, who was also Petitioner's appellate counsel, did not properly perform his duties as Petitioner's trial counsel. Information throughout Petitioner's motion indicate that Mr. Matthews was diligent in maintaining correspondence with him. For example, Mr. Matthews mailed Petitioner a copy of the Fourth Circuit opinion rending Petitioner's sole issue on appeal moot.

Petitioner has not shown that his appellate counsel did not fulfill his duties or that counsel did not adequately argue his case. Moreover, he has not shown what non-frivolous claims counsel should have raised but did not, what prejudice he has suffered from the failure to raise additional claims, or what additional arguments should have been made but were not. Petitioner has failed both prongs of the Strickland "performance" and "prejudice" test and therefore his claim fails.

Finally, Petitioner claim that he was coerced into withdrawing his appeal is completely without merit. Petitioner fails to allege the coercive tactics used by counsel other than by stating that his attorney withdrew an appellate issue that Petitioner himself calls "wholly frivolous" and which was actually rendered moot at the time of filing. Absent any other incidents of coercion, Petitioner's must be dismissed for failure to state a cognizable claim for which relief can be granted.

14

## AN EVIDENTIARY HEARING IS UNNECESSARY

In many instances, it is appropriate for the sentencing judge to dispose of a § 2255 motion based upon the judge's familiarity with the case. Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977) (subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that on the face of the record are wholly incredible). Accord: Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (conclusory, unsupported allegations do not entitle a habeas petitioner to an evidentiary hearing).

The Supreme Court has made clear that where the record shows that a defendant is not entitled to relief, no hearing is necessary. Fontaine v. United States, 411, U.S. 213, 215 (1973).

## CONCLUSION

For the foregoing reasons, defendant/petitioner's claim should be dismissed. Furthermore, it is respectfully requested that this Court dispense with an evidentiary hearing and summarily dismiss this action in its entirety.

This is the 23rd day of March, 2001.

ROBERT J. CONRAD, JR.
UNITED STATES ATTORNEY

BRIAN S. CROMWELL
ASSISTANT UNITED STATES ATTORNEY

15

## CERTIFICATE OF SERVICE

This is to certify that I have served the opposing party in this action with a copy of the foregoing Government's Response, by depositing in the United States mail a copy of same in a properly addressed envelope, to:

Herman Lee Tate
Reg. No. 13566-058
USP-Atlanta
Box PMB
Atlanta, GA  30315

March 23, 2001

BRIAN S. CROMWELL
ASSISTANT UNITED STATES ATTORNEY